UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ABIODUN SOWEWIMO,
        Plaintiff,

        vs.                                                    08-1263

ASHTON  BLAKEWELL, et. al.,
        Defendants.

SUMMARY JUDGEMENT ORDER

        This cause is before the court for consideration of the Defendants' second motion for
summary judgment. [d/e 53].

I. BACKGROUND

        The pro se Plaintiff filed his complaint pursuant to 42 U.S.C.§1983 claiming that his
constitutional rights were violated at Hill Correctional Center.  On March 3, 2010, the court
considered the Defendants' first motion for summary judgement alleging that the Plaintiff had
not exhausted his administrative remedies for his claims as required. *See* March 3, 2010
Summary Judgement Order.   The court granted the motion in part and denied the motion in part.
*Id.*  Consequently, the Plaintiff has one surviving claim that Correctional Officers Ashton
Blakewell, Tammy Bennett and Christopher McLaughlin retaliated against the Plaintiff in
violation of his First Amendment rights. *See* March 3, 2010 Summary Judgement and Case
Management Order.  Specifically, the Plaintiff alleges that the Defendants refused to return a
Certificate of Deposit that was taken from his cell in May of 2007 in retaliation for his previous
lawsuits and grievances.

II. FACTS

        On May 20, 2007, Defendant McLaughlin says he interviewed the Plaintiff after the
Plaintiff filed a grievance claiming his life was in danger and he needed an emergency
transfer.(Def. Memo, Ex. A, McLaug. Aff, p. 1). The Plaintiff admitted that he had made the
story up because he was unable to get a job at Hill Correctional Center and he hoped to be
transferred. (Comp., p. 21). Defendant McLaughlin reviewed the Plaintiff's master file and found
other grievances the Plaintiff had filed at other facilities making the same claims that he was in
danger.  In these cases, the Plaintiff also failed to provide any information to support his
allegations.  Defendant McLaughlin informed the Plaintiff that he was going to be placed in
segregation and receive a disciplinary report for providing false information.   Defendant
McLaughlin says the Plaintiff then began to argue with him about his placement and advised
Defendants McLaughlin, Bennett and Blackwell that "you don't want to do down this road."

1

(Comp, p. 21).

McLaughlin says this was the end of his contact with the Plaintiff on May 20, 2007. (Def. Memo, Ex. A, McLaug. Aff, p. 1). McLaughlin says he did not order a search of the Plaintiff's property, nor did he personally search the Plaintiff's property. *Id.* In addition, McLaughlin says he has no knowledge of any of the claims that the Plaintiff had contraband property in his cell including the Certificate of Deposit the Plaintiff mentions in his complaint. *Id.*

Officers Tammy Bennet and Ashton Blakewell were present during the interview between McLaughlin and the Plaintiff, and then escorted the Plaintiff to segregation. (Def. Memo, Ex. A, McL. Aff, p. 1). Bennett says whenever an inmate is transferred to segregation, "a routine search of the inmate's property is done as a result of their placement." (Def. Memo, Ex. B, Ben. Aff, p. 1). Bennett says the officers conducting the search of the Plaintiff's property confiscated a Certificate of Deposit (herein C.D.) *Id.* Bennett says she did not order the search, nor did she order the officers to confiscate any specific items. *Id.*

On May 21, 2007, Ashton Blakewell was the Contraband Officer at Hill Correctional Center. (Def. Memo, Ex. C, Blake. Aff, p. 1). On this day, Blakewell says he received items taken from the Plaintiff's cell that were designated as contraband including a the C.D.and a cloth the Plaintiff claimed was a prayer rug. *Id.* The Defendants have provided a copy of an Evidence Disposal Report which indicates that on May 20, 2007, a C.D. was taken from the Plaintiff's cell. (Def. Memo, Group Ex. 1, p. 4). The Defendants have also included the Shakedown Record/Confiscated Contraband Record which states officers took a C.D.dated March 10, 1998 in the amount of $2,500 made payable to the Plaintiff. (Def. Memo, Group Ex. 1, p. 5). Blakewell says he did not personally search the plaintiff's cell, nor did he order the search. *Id.*

Blakewell says he placed the items on hold awaiting the results of the Plaintiff's grievance regarding his property. (Def. Memo, Ex. C, Blake. Aff, p. 1). In addition, the C.D. "was also placed on hold based on the Hill Correctional Center's Business Office Administrator verifying with the Illinois Department of Corrections main office as to whether (the Plaintiff) had available assets necessary to be financially responsible for his incarceration." (Def. Memo, Ex. C, Blake. Aff, p. 1).

On June 3, 2007, the Plaintiff filed a grievance asking that prison officials either return his C.D. or allow him to send it home. The Grievance Counselor responded that the contraband officer would discuss the items with the Plaintiff in the next week. On June 22, 2007, the Grievance Officer stated that he has spoken with Defendant Blakewell and the Defendant said "he is waiting for a response from Springfield regarding what the disposition of the certificate of deposit paperwork should be. " (Comp, Ex. B, Plain. Griev.). The Grievance Officer also denied the grievance and on July10, 2007, the Warden concurred with the denial. The Plaintiff appealed this decision.

On October 23, 2007, the Plaintiff received a response from Administrative Review Board Member Sherry Benton. Benton said the board agreed that the C.D. should be returned to the Plaintiff and the C.D. will therefore be forward to the Plaintiff at Lawrence Correctional Center. (Comp, Ex. C, ARB ltr).

On March 26, 2008, the Shakedown Record/Confiscated Contraband Record documents that the current Contraband Officer, Brian Batton, forwarded the C.D. to the Lawrence Correctional Center because the Plaintiff had been transferred to this institution. (Def. Memo, Ex. B, Ben. Aff, p. 1).

On August 25, 2008, the Plaintiff received a revised report from the Administrative Review Board. (Comp, p. 17) The letter from Board Member Sherry Benton stated:

> This office had originally ruled that the Certificate of Deposit was to be forwarded to Lawrence, along with the rug for disposition. This office has been advised that the Certificate of Deposit (copy of) has been provided to (the Plaintiff). If (the Plaintiff) wishes to have an original, he can request one through the bank it was issued at. (Comp, p. 17)

The letter also stated that the Plaintiff's rug has been misplaced and he will receive compensation for a replacement.

The Plaintiff filed this lawsuit on September 25, 2008. The Plaintiff claims he has not received his Certificate of Deposit, nor has he received a copy of it.

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## C. ANALYSIS

The Defendants argue there is no evidence before the court that they violated the Plaintiff's First Amendment rights. It is well established that "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir.2000); *see also Walker v. Thompson*, 288 F.3d 1005, 1008-1009 (7th Cir.2002). Therefore, prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *Walker,* 288 F.3d 1005; *De Walt v. Carter*, 224 F.3d 607 (7th Cir.2000); *Babcock v. White*, 102 F.3d 267 (7th Cir.1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir.1988). To prevail on his First Amendment retaliation claim, the Plaintiff must show that he engaged in activity protected by the First Amendment; he suffered a deprivation that would likely deter First Amendment activity in the future; and the First Amendment activity motivated the decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir.2009). The court will consider the Plaintiff's claims against each individual Defendant:

The Plaintiff alleges that Defendant McLaughlin retaliated against him based on his previous grievances. Defendant McLaughlin admits in his May 20, 2007 disciplinary report that he reviewed the Plaintiff's master file after the Plaintiff admitted he was lying. Defendant McLaughlin says he found other grievances the Plaintiff filed at other institutions also alleging he was in danger. The Plaintiff says Defendant McLaughlin then stated that the Plaintiff had a "trait of doing the same thing in Menard." (Comp, p. 8). The Plaintiff says McLaughlin told him he would not get away with it this time, "we will punish you for your pattern of conflict and confrontation with the offices of the internal investigators." (Comp, p. 8).

There are several problems with the Plaintiff's claim against this Defendant. First, the Plaintiff admitted that he had lied in his grievance claiming he was in danger at Hill Correctional Center. A violation of institutional rules is not a protected activity. *Lindell v. O'Donnell*, 2005 WL 2740999 at 29 (W.D.Wis. Oct. 21, 2005)("Refusing to follow prison rules is not a constitutionally protected action.") *citing Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.2001) ("If a prisoner violates a legitimate prison regulation, he is not engaged in protected conduct."). Second, even if the Defendant based his decision on previous grievances, Defendant McLaughlin's decision was to issue a disciplinary ticket, not to take the Plaintiff's C.D. There is no evidence before this court that Defendant McLaughlin was involved in escorting the Plaintiff to segregation or searching the Plaintiff's cell or taking the Plaintiff's C.D. There is no evidence this Defendant was ever in possession of the Plaintiff's C.D. The motion for summary judgment is granted for the Plaintiff's claim against Defendant McLaughlin.

The Plaintiff claims Defendant Bennett retaliated against him based on a previous

lawsuit.  Specifically, the Plaintiff claims Officer Bennett told him on May 20, 2007, that he was stubborn and would be punished. (Comp, p. 9)  In June of 2007, the Plaintiff says he asked this Defendant about his C.D. and she told him he would not get it back because of "all your problems and conflicts with the internal investigators offices and lawsuits." (Comp, p. 9)  The Plaintiff has not explained how previous internal affairs investigations could be a protected activity, and again violating prison rules is not protected conduct. *Smith,* 250 F.3d at 1037 However, the Plaintiff does also state that Plaintiff Bennett retaliated against him because of a previous lawsuit.

In his deposition, the Plaintiff admits that he had no previous lawsuits while he was incarcerated at Hill Correctional Center. (Def. Memo, Ex. D, Plain. Depo, p. 51) Instead, the Plaintiff claims the Defendant was referring to lawsuit he filed against defendants at Menard Correction Center on April 24, 2001. *(See Sowewmo v Cowan,* Case. No. 01 cv 255 in the United States District Court for the Southern District of Illinois).  The court notes this lawsuit was filed six years before the taking of the Plaintiff's C.D., and did not involve the same defendants or the same correctional facility.

More importantly, while this Defendant did escort the Plaintiff to his cell, there is no evidence she took part in the search of the Plaintiff's cell, nor that she confiscated his C.D. Even if the Defendant did state that the Plaintiff would not get his C.D. back, there is no evidence that this Defendant was ever in possession of the Plaintiff's C.D or ever had any control over the C.D.  The motion for summary judgment is granted for the Plaintiff's claims against Defendant Bennett.

Defendant Blakewell did have control over the Plaintiff's C.D. as Contraband officer.  In addition, the Plaintiff claims this Defendant knew he had a C.D. because it was confiscated when he received a different disciplinary ticket in March of 2007.  The Plaintiff claims on that occasion, Defendant Blakewell returned his C.D.   However, the Plaintiff has provided no documentary evidence to support this claim.

The Plaintiff says that Defendant Blakewell told the Plaintiff in May of 2007: "I don't care what you do, you will not get your certificate of deposit back cause I will destroy it cause you  are stubborn and have a record of conflict confrontations with the Illinois Department of Corrections Internal Investigators, Guards and like to file lawsuits." (Comp, p. 7; Plaint Resp, p. 3).  Based on this evidence, the only activity that could be protected by the First Amendment is a prior lawsuit, and the Plaintiff again says his lawsuit at Menard Correctional Center was the basis of Defendant Blakewell's retaliatory act.   The court finds that a fact finder could not reasonably  infer that the Defendant retaliated against the Plaintiff based on a lawsuit filed six years prior at a different institution against different Defendants.  There is no plausible connection of any kind in the record before the court between the previous lawsuit and the conduct alleged in this lawsuit.

However, even if Defendant Blakewell's knowledge of the Plaintiff's earlier lawsuit at a different institution is viewed as a basis for retaliation, there must still be some factual basis on the record to show that Defendant Blakewell actually followed through on his retaliation threat. There is no showing in the Complaint or record that Defendant Blakewell carried out or was in a position to carry out his threat given the fact that on March 28, 2008, the Shakedown Record/Confiscated Contraband Record documents under the control of then Contraband Officer Brian Batton reflect that Plaintiff's C.D. was forwarded to Lawrence Correctional Center where the Plaintiff was housed. Under those circumstances, the claim against Defendant Blakewell loses its viability. The Defendants motion for summary judgment is therefore granted.

**IT IS THEREFORE ORDERED that:**

1) **The Defendants' second motion for summary judgment is granted. [d/e 53]. The Clerk of the Court is directed to enter judgment in favor of the Defendants and against the Plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.**

2) **If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the Plaintiff may also accumulate a strike under 28 U.S.C. 1915(g)**

3) **The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the Plaintiff's prison trust fund account if such funds are available. If the Plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the Plaintiff's trust fund account to the clerk of court each time the Plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

4) **The Plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the Plaintiff of his obligation to pay the filing fee in full. The Plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

5) **The clerk is directed to mail a copy of this order to the Plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 18th day of February, 2011.

**s/Joe Billy McDade**
_____
JOE BILLY MCDADE
UNITED STATES DISTRICT JUDGE